**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER CAROVILLANO and STEVEN BRANDT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Christopher Carovillano and Steven Brandt, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Sirius XM Radio Inc. ("SiriusXM" or "Defendant"):

## I.      INTRODUCTION

1.      This is a proposed class action, brought under New York law on behalf of a nationwide class of current and former SiriusXM subscribers, challenging a false advertising and deceptive pricing scheme whereby SiriusXM falsely advertises its music plans at lower prices than it actually charges. Specifically, SiriusXM fails to include in its advertised and promised prices the amount of its invented "U.S. Music Royalty Fee" (the "Fee"), which increases the <u>true</u> price of its music plans by a whopping 21.4% above the advertised and promised price for each plan.

2.      SiriusXM intentionally does not disclose the Fee to its customers. SiriusXM even goes so far as to not mention the words "U.S. Music Royalty Fee" in <u>any</u> of its advertising, not even in the fine print. SiriusXM's sole advertising disclaimer is that "Fees and taxes apply," but

in reality, the undisclosed U.S. Music Royalty Fee is the primary component—and in most states, it is the <u>sole</u> component[1]—of "Fees and Taxes."

    3.     Once consumers have been lured to sign up, SiriusXM prevents them from learning about its scheme by <u>never</u> thereafter sending its customers periodic bills or payment receipts. All the while, SiriusXM silently and automatically renews their subscriptions month after month and year after year. And, as the price of its customers' music plans increase—<u>e.g.</u>, when a promotional rate expires—the U.S. Music Royalty Fee, being a flat 21.4% charge, also increases.

    4.     Notably, <u>none</u> of SiriusXM's competitors charge a separate royalty fee above and beyond their advertised music plan prices. SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone call it "Fees and Taxes."

    5.     Even the <u>name</u> of the U.S. Music Royalty Fee is deceptive. SiriusXM misleadingly calls it a "U.S." fee to falsely indicate to consumers (<u>i.e.</u>, to those few consumers who learn about its existence) that it is a government-related fee when in fact it is not.

    6.     In the event that a subscriber happens to notice that he or she has been charged the U.S. Music Royalty Fee and then contacts SiriusXM to inquire about the Fee, SiriusXM has a policy and practice of falsely telling the subscriber that the Fee is a government-related fee and/or that it is outside of SiriusXM's control.

    7.     SiriusXM's U.S. Music Royalty Fee scheme has been the source of **<u>all</u>** of SiriusXM's profits for the past several years. For example, in 2022, SiriusXM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.21

---

[1] In most states, such as in New York, the U.S. Music Royalty Fee is the <u>sole</u> component of "Fees and Taxes" because there are <u>zero</u> taxes charged and <u>zero</u> other fees charged. In the remaining states (<u>i.e.</u>, in those states which impose sales tax on services), the U.S. Music Royalty Fee is the primary component of "Fees and Taxes," with the only other component being the state sales tax.

billion.  In other words, in 2022, U.S. Music Royalty Fee revenues were equal to 122% of the net profits for the entire company.[2]

8.  SiriusXM falsely advertised the prices of its music plans to Plaintiffs and the Class members, and SiriusXM never adequately disclosed to them that the U.S. Music Royalty Fee would be charged on top of its advertised prices, increasing those prices by a flat 21.4% for each customer.  Nor did SiriusXM ever disclose to its customers the true nature of the Fee—i.e., that it is a profit center for SiriusXM.  Meanwhile, SiriusXM's sign-up process, automatic renewal process, and policy of not sending periodic billing notices or payment receipts are deliberately designed to prevent subscribers from learning of the U.S. Music Royalty Fee.

9.  SiriusXM automatically charges the U.S. Music Royalty Fee to nearly all of its subscribers nationwide.  Since SiriusXM invented and introduced the Fee in 2009, Plaintiffs estimate that SiriusXM has unlawfully extracted **over $11 billion** from its consumers in unlawful U.S. Music Royalty Fee charges.

10.  Plaintiffs Christopher Carovillano and Steven Brandt bring this lawsuit individually and as private attorneys general seeking public injunctive relief to protect the general public by putting an end to SiriusXM's unlawful advertising and overcharging scheme. Plaintiffs also seek declaratory relief, including a declaration that SiriusXM's arbitration clause is unconscionable and/or unenforceable as to Plaintiffs and the proposed Class of SiriusXM subscribers who signed up by phone, and a declaration that SiriusXM's practices alleged herein are unlawful under New York law.  Plaintiffs also seek restitution on behalf of themselves and the Class, including disgorgement of all revenues and/or unjust enrichment SiriusXM obtained from them as a result of the unlawful conduct alleged herein.  Plaintiffs further seek damages for

---

[2] In 2022, SiriusXM had subscriber revenues of $6.37 billion, 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee.

Plaintiffs and Class members in the amount they paid in U.S. Music Royalty Fees, and in the amount of their overpayments which resulted from SiriusXM's deceptive automatic renewal practices.

11.     Specifically, Plaintiffs seek injunctive, declaratory, monetary, and statutory relief for themselves and the proposed Class to obtain redress and to end SiriusXM's unlawful policy of false advertising and charging this deceptive, undisclosed additional Fee, bringing claims under New York General Business Law §§ 349 and 350, as well as New York common law.

12.     To be clear, Plaintiffs are <u>not</u> seeking to regulate the existence or amount of the U.S. Music Royalty Fee (although Plaintiffs contend that the <u>name</u> of the Fee is deceptive because SiriusXM intentionally calls it a "U.S." fee to trick consumers into thinking it is a government-related fee).  Rather, Plaintiffs merely want SiriusXM to include the <u>amount</u> of the so-called U.S. Music Royalty Fee in the music plan prices it advertises to the general public, and to adequately disclose the Fee and its true nature and basis.

## II.     <u>THE PARTIES</u>

13.     Plaintiff Christopher Carovillano is a citizen and resident of Pelham, New York, and was a subscriber of SiriusXM's music plans during the class period.  Like every other Class member, Plaintiff Carovillano has been victimized by the same uniform policies described in detail herein, in that he signed up for SiriusXM's music plans on the phone with a SiriusXM agent in the manner described herein, received or was directed to the same uniformly-worded documents, emails, and/or websites described herein, and paid the undisclosed, extra-contractual U.S. Music Royalty Fee complained of herein.

14.     Plaintiff Steven Brandt is a citizen and resident of Pattersonville, New York, and was a subscriber of SiriusXM's music plans during the class period.  Like every other Class

member, Plaintiff Brandt has been victimized by the same uniform policies described in detail herein, in that he signed up for SiriusXM's music plans on the phone with a SiriusXM agent in the manner described herein, received or was directed to the same uniformly-worded documents, emails, and/or websites described herein, and paid the undisclosed, extra-contractual U.S. Music Royalty Fee complained of herein.

15.     Defendant Sirius XM Radio Inc. ("SiriusXM") is a corporation chartered under the laws of Delaware, with its principal place of business in New York, and thus is a citizen of Delaware and New York.

16.     Defendant Sirius XM Radio Inc. created, implemented, and received the proceeds from the unlawful scheme at issue in this Complaint, namely, the imposition, charging, and collection of the undisclosed, extra-contractual U.S. Music Royalty Fee to its customers.

## III.   <u>JURISDICTION AND VENUE</u>

17.     Jurisdiction over this matter is proper in the United States District Court under the Class Action Fairness Act in that this is a proposed class action, Defendant SiriusXM is a citizen of a different state than at least one member of the proposed nationwide Class, and the amount in controversy far exceeds $5 million.

18.     This Court has personal jurisdiction over SiriusXM because: (1) SiriusXM is a citizen of, and has its principal place of business in, the State of New York; (2) SiriusXM is authorized to do business and in fact regularly conducts business in the State of New York; (3) the claims alleged herein took place primarily in New York, where SiriusXM created, imposed, and collected the complained-of Fee; and/or (4) SiriusXM has committed tortious acts within the State of New York (as alleged, without limitation, throughout this Complaint).

19.     Venue is proper pursuant to 28 U.S.C. §1391 in the Southern District of New York, in that Defendant SiriusXM is a citizen of and maintains its principal place of business in this District.

20.     This case is not subject to forced arbitration or any prohibition on class actions because Plaintiffs and the Class were never shown, and never agreed to, any arbitration clause or class action waiver with respect to Defendant SiriusXM or the claims made herein either before or at the time they signed up for a SiriusXM music plan on the phone with a SiriusXM agent.

## IV.     NEW YORK LAW APPLIES TO THE CLAIMS OF PLAINTIFFS AND THE CLASS

21.     New York law applies to the claims of Plaintiffs and the Class because, *inter alia*: (1) Plaintiffs and each Class member purchased services from SiriusXM's headquarters in New York; (2) they each were charged the complained-of U.S. Music Royalty Fee by SiriusXM from its headquarters in New York; (3) the complained-of Fees were paid to and collected by SiriusXM at its headquarters in New York; and/or (4) SiriusXM's misrepresentations, omissions, false and misleading conduct, deceptive acts, and other unlawful policies complained of herein arose from and were made at SiriusXM's headquarters in New York.  Thus, a substantial part of SiriusXM's complained-of conduct occurred in and emanated from New York state.  *See*, *e.g.*, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013). In addition, SiriusXM has made clear that it intends that New York law should apply, given that SiriusXM inserted a New York choice of law clause in the form customer agreement posted on its website.

## V.     FACTUAL ALLEGATIONS OF SIRIUSXM'S DECEPTIVE PRICING SCHEME

22.     Defendant provides SiriusXM-branded satellite radio and internet-only streaming plans to approximately 34 million consumers nationwide.  Nearly all of the service plans offered by SiriusXM include music channels ("music plans").

23.    SiriusXM falsely advertises its music plans at lower rates than it actually charges by not disclosing, and not including in the advertised price, the amount of its invented U.S. Music Royalty Fee, which increases the true plan price by a whopping 21.4% over and above the advertised price for the plan for each SiriusXM customer.  SiriusXM intentionally does not disclose the extra Fee.  SiriusXM even goes so far as to not mention the words "U.S. Music Royalty Fee" in any of its advertising, including in the fine print.  Once consumers have been lured to sign up, SiriusXM prevents them from learning about its scheme by never thereafter sending its customers periodic bills or payment receipts.  All the while, SiriusXM silently and automatically renews their subscriptions month after month and year after year.

24.    SiriusXM imposes the U.S. Music Royalty Fee on all subscribers of its satellite radio music plans (satellite radio subscribers comprise the overwhelming majority of SiriusXM subscribers).  SiriusXM also imposes the U.S. Music Royalty Fee on most subscribers of its less popular SiriusXM-branded internet-only streaming music plans.[3]

25.    The overwhelming majority of SiriusXM subscribers utilize SiriusXM's services in their automobiles.  SiriusXM's satellite radios are pre-installed in 84% of the over 13 million new automobiles sold each year in the United States.[4]  All of the 13 million-plus annual buyers of new vehicles are automatically provided a free 3- to 6-month trial of SiriusXM service.[5] SiriusXM's satellite radios are also already installed in 51% of the 36 million used automobiles

---

[3] The only streaming music plan subscribers who are not charged the U.S. Music Royalty Fee are streaming music subscribers of the SiriusXM app who are signed up and billed through the Apple App Store or Google Play Store platforms.

[4] See "Car Market Puts SiriusXM's 2022 Growth Plans Into The Slow Lane," InsideRadio.com, July 28, 2022, available at https://www.insideradio.com/free/car-market-puts-siriusxm-s-2022-growth-plans-into-the-slow-lane/article_c577b85c-0ea6-11ed-a4f3-6316ccfafd88.html#:~:text=Its%20receivers%20are%20now%20installed,satellite%20radio%20don't%20bother.

[5] More specifically, new cars generally come with a free trial of SiriusXM's Platinum Plan, with 165+ channels including dozens of music channels.

7

sold each year.[6]  Many of the buyers of these used vehicles are likewise automatically enrolled in free SiriusXM trials.

26.     SiriusXM's business model relies on converting these millions of vehicle buyers from free trial users into paid subscribers of automatically renewing music plans.

27.     This effort begins with a revenue-sharing arrangement with the leading automakers: SiriusXM pays over $1 billion a year in subsidies and revenue splits to the automakers.[7]  Pursuant to this revenue sharing arrangement, automotive dealerships submit the contact information of their recent car buyers directly to SiriusXM's marketing department.  The automakers and auto dealers then get a cut of the SiriusXM subscription revenue that results.

28.     After receiving the contact information of the vehicle buyers, SiriusXM proceeds to inundate them with marketing emails, direct mailers, and telemarketing calls in an attempt to get the consumers to provide their credit or debit card information to SiriusXM so that SiriusXM can sign them up for paid—and automatically renewing—music plan subscriptions.

A.     **The U.S. Music Royalty Fee.**

29.     The U.S. Music Royalty Fee is a uniform additional 21.4% charge that SiriusXM collects from SiriusXM subscribers over and above the advertised and quoted price of each music plan.[8]

---

[6] *Id. Also see* report on used vehicle market based on data from Cox Automotive, at https://www.autonews.com/used-cars/used-car-volume-hits-lowest-mark-nearly-decade#:~:text=The%20number%20of%20used%20cars,about%2035.8%20million%20were%20sold.

[7] For example, in 2016, SiriusXM paid about $1 billion a year in subsidies and revenue splits to automakers. *See* Sisario, Ben, "SiriusXM Fights to Dominate the Dashboard of the Connected Car," New York Times, February 20, 2016 (behind pay wall at https://www.nytimes.com/2016/02/21/business/media/siriusxm-fights-to-dominate-the-dashboard-of-the-connected-car.html).

[8] Notably, SiriusXM charges its customers a U.S. Music Royalty Fee equal to 21.4% of whatever the customers agreed to pay for their music plans, rather than a flat amount.  Thus, customers who pay $5 per month for their music plans pay a Fee of $1.07, while customers who pay a higher monthly amount pay a higher fee.  Of course, SiriusXM never discloses or explains this to its customers.

30.    SiriusXM invented and first added the U.S. Music Royalty Fee to its music plans in 2009, at a 13.9% flat rate charge. Since then, SiriusXM has periodically increased the Fee, up to the current 21.4% rate.

31.    SiriusXM's U.S. Music Royalty Fee scheme has been the source of **all** of SiriusXM's profits for the past several years.  For example, in 2022, SiriusXM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.21 billion.  In other words, in 2022, U.S. Music Royalty Fee revenues were equal to 122% of the net profits for the entire company.[9]

32.    The U.S. Music Royalty Fee scheme is at the heart of SiriusXM's marketing plan. The scheme enables SiriusXM to falsely advertise its music plans for much lower rates than what SiriusXM actually charges, in order to lure as many consumers as possible into signing up for automatically-renewing subscriptions and paying more than they otherwise would have paid.

33.    Then, after a customer has agreed to sign up for a SiriusXM music plan at the advertised and quoted price, SiriusXM unilaterally imposes the undisclosed, extra-contractual U.S. Music Royalty Fee, thereby increasing the actual price for its music plans by 21.4% more than the advertised price that the customer agreed to pay.

34.    Meanwhile, SiriusXM is alone in charging such a fee.  None of SiriusXM's major music streaming competitors (for example, Apple Music, Spotify, Amazon Music, Google Play Music) charge any such separate music royalty fee above and beyond their advertised music plan prices.  Reasonable consumers would not expect SiriusXM to charge such a fee, let alone hide it as "Fees and Taxes."  The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

---

[9] In 2022, SiriusXM had subscriber revenues of $6.37 billion, 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee.

35.     SiriusXM automatically charges the U.S. Music Royalty Fee to nearly all of its subscribers nationwide.  Since SiriusXM invented and introduced the Fee in 2009, Plaintiffs estimate that SiriusXM has unlawfully extracted over $11 billion from its customers in U.S. Music Royalty Fee charges.

**B.      SiriusXM Fails to Disclose the U.S. Music Royalty Fee in Its Advertisements.**

36.     SiriusXM advertises its satellite radio and streaming music plans through marketing directed at the consuming public throughout the United States via email campaigns, direct mail campaigns, telemarketing campaigns, internet advertising, television advertising, and radio advertising.  Meanwhile, the tens of millions of automobiles which are equipped with a SiriusXM satellite radio, but which do not have an active trial or a current paid subscription, will constantly prompt the consumer to subscribe to SiriusXM anytime the consumer switches the car audio system to the SiriusXM radio setting.

37.     Through all of these channels, SiriusXM consistently and prominently advertises flat periodic prices for its music plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

38.     None of SiriusXM's advertisements for music plans names or mentions the existence of the U.S. Music Royalty Fee or its amount—not even in the fine print.  Likewise, none of SiriusXM's advertisements states the true music plan price after adding the amount of the U.S. Music Royalty Fee.  And there is no asterisk adjacent to the advertised price in any of SiriusXM's advertisements or materials.

39.     SiriusXM's sole advertising disclaimer is that "Fees and taxes apply," but in reality, the undisclosed U.S. Music Royalty Fee is the primary component—and in most states, it

is the <u>sole</u> component[10]—of "Fees and Taxes."  SiriusXM has essentially relabeled the U.S. Music Royalty Fee as "Fees and Taxes" for the sole purpose of deceiving consumers.

40.      Meanwhile, <u>none</u> of SiriusXM's competitors charge any separate royalty fee above and beyond their advertised music plan prices.  SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone call it "Fees and Taxes."

---

[10] In most states, such as in New York, the U.S. Music Royalty Fee is the <u>sole</u> component of "Fees and Taxes" because there are <u>zero</u> taxes charged and <u>zero</u> other fees charged. In the remaining states (<u>i.e.</u>, in those states which impose sales tax on services), the U.S. Music Royalty Fee is the primary component of "Fees and Taxes," with the only other component being the state sales tax.

41.    Below is an example of a marketing direct mailer sent by SiriusXM in December 2022 to a consumer who was in a SiriusXM free trial that automatically came with a new vehicle:

**SiriusXM Promotional Mailer to Consumer in Free Trial With New Vehicle**



42.     The above mailer is a typical example of the millions of promotional mailers that SiriusXM sends to new vehicle purchasers each year.  Notably, the top right of the ad features "Get 12 Months for $5/Month," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07 per month) that the plan actually costs due to the Fee.  There is no asterisk next to the advertised price, and in fact nowhere in the entire mailer—not even in the fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its amount.  The only disclosure language in the entire mailer is the phrase "Fees and taxes apply," which is in small print in the circle on the left of the ad, where it also says "See Offer Details below."  But the "Offer Details" (which can be found in the fine print at the bottom of the mailer) likewise only states the same phrase "Fees and taxes apply," with no further details. It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and taxes" are or their amounts.

43.     The "Offer Details" fine print mentions that the plan will automatically renew after the 12-month promotion "at then-current rates (currently, $17.99)"—but again does not disclose that the actual rate at which the plan will be renewed is 21.4% higher than the advertised "then-current" rate (i.e., a true rate of $21.84) due to the U.S. Music Royalty Fee. Nor does the mailer mention that, as the music plan rate increases from $5 to $17.99, the (undisclosed) Fee will more than triple from $1.07 to $3.85.[11]

---

[11] The intentional nature of SiriusXM's misrepresentations and omissions are further evidenced by the fact that while Defendant Sirius XM Radio Inc. decided to totally avoid mentioning the name of the U.S. Music Royalty Fee or its amount in any of its advertising (including even in the "Offer Details" fine print, as reflected in the ads printed in this Complaint), the company's Canadian sister company, Sirius XM Canada Inc., chose a different approach. Sirius XM Canada Inc., in contrast, decided to go ahead and disclose the name of the fee and its percentage amount (which in Canada is called the "Music Royalty and Administrative Fee") in the "Offer Details" fine print of its otherwise nearly identical ads.

44.    Below is an example of a marketing email sent by SiriusXM in February 2023 to a consumer whose free SiriusXM trial (which came with a newly purchased vehicle) elapsed:

**SiriusXM Promotional Email to Consumer Whose Vehicle Free Trial Elapsed**



45.    The above email is a typical example of the millions of emails SiriusXM sends to purchasers of new automobiles who are in an automatic free trial of SiriusXM or whose trial has already elapsed. Notably, the email states the price is "JUST $5/MO", but makes no mention of

14

the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07 per month) that the plan actually costs due to the Fee.  There is no asterisk next to the advertised price, and in fact nowhere in the entire email—not even in the fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its amount.  In fact, nowhere in the email is there any mention of the existence of any fees at all.  There is a phrase "See Offer Details," but there is no "Offer Details" section in the email.  It turns out that the white "Offer Details" text is a non-obvious hyperlink (with no hyperlink indicators).  If the consumer figured out to click on the "Offer Details" text on the email, the consumer would be brought to the webpage below:



46.    This offer/disclaimer webpage promises "$5/mo for 12 months," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07 per month) that the plan actually costs due to the Fee.  Below the prominent text "$5/mo for 12 months," smaller text reads: "Then $18.99/mo. Fees & taxes apply. See **Offer Details** below."  But the fine print

"Offer Details" at the bottom of the webpage states only the same phrase "Fees and Taxes apply," with no further details.  It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and Taxes" are or their amounts.  Most significantly, it fails to mention that the renewal rate will not be the promised "$18.99/mo.," but rather will be 21.4% higher—where the undisclosed Fee will increase nearly four-fold to $4.06—for an actual total of $23.05 per month.

47.     Consequently, these advertisements were and are false because the offered SiriusXM music plans are not "JUST $5/MO", nor will they renew at "$18.99/mo." as promised.  Rather, the true prices of the music plans will be 21.4% higher than SiriusXM advertised, due to SiriusXM's unilateral addition of the undisclosed, extra-contractual U.S. Music Royalty Fee to the promised rates.

**C.     SiriusXM Fails to Disclose the U.S. Music Royalty Fee to Consumers on Its Website.**

48.     For years, SiriusXM's consumer website has advertised its music plans by prominently featuring flat periodic prices for the plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

49.     For example, SiriusXM's website recently listed the following music plans (on the "Browse Plans and Pricing" webpage):

**Music Plans Offered on the SiriusXM Website**



50.      All of these options (including both the 3-month promotional $1 price, and the stated higher prices after the 3 months) are presented as having a flat rate.  The prices exclude the additional 21.4% charge for the U.S. Music Royalty Fee.  The prices do not have asterisks, and the only disclosure language is on the left side, where smaller print says "Plus fees and taxes <u>See Offer Details Below</u>."  But the "Offer Details" at the bottom of the webpage (which follows a section of "Frequently Asked Questions" that likewise makes no mention of the Fee), states

only the same phrase "Fees and taxes apply."  It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and taxes" are or their amounts.

51.     If the consumer clicks on the blue "GET" button for the respective music plan, the consumer is taken through SiriusXM's online purchase process. Each page of the purchase process features "$1 for 3 months" on the top, and smaller text stating the higher price after the 3 months (e.g., "Then 23.99/mo.").

52.     Below is the final page of the purchase process (i.e., the order submission page) for the Platinum music plan.  This final order submission page is the only page of the entire purchase process which lists a specific additional amount for "Fees and Taxes."



54.     Under "Order Summary," SiriusXM shows a price of $1.00 for 3 months of the music plan ($0.33/mo), plus "Fees and Taxes" of $0.21.  In this example, "Fees and Taxes" are comprised entirely of the unmentioned 21.4% U.S. Music Royalty Fee (i.e., $0.21 = 21.4% of the $1.00 plan price).  Similarly, when the promotional rate of "$1.00 for 3 months" expires and the customer's monthly rate automatically increases to the stated "$23.99/mo.," the U.S. Music Royalty Fee comprises the entire amount of the additional "Fees and Taxes" of $5.13 per month.

55.     SiriusXM disguises its invented and deceptive U.S. Music Royalty Fee as "Fees and Taxes."  Given that the U.S. Music Royalty Fee is the primary component—and in most states, it is the sole component—of "Fees and Taxes," SiriusXM has essentially relabeled the U.S. Music Royalty Fee as "Fees and Taxes" as part of its scheme to deceive consumers.

56.     SiriusXM knows and intends that reasonable consumers will understand and assume that the amount listed as "Fees and Taxes" is comprised of legitimate taxes and government-related fees passed on by SiriusXM to its subscribers.  SiriusXM knows and intends that reasonable consumers would not expect that SiriusXM—unlike every other music streaming service—would invent and charge the so-called "U.S. Music Royalty Fee" over and above the advertised price for the music plan to pad its profits.  And SiriusXM knows that consumers certainly would not expect such a charge to be labeled as "Fees and Taxes."

**D.     SiriusXM Fails to Disclose the U.S. Music Royalty Fee to Consumers When They Sign Up Over the Phone.**

57.     Likewise, SiriusXM sales and customer service agents have been trained for years, as a matter of company policy, to present telephone customers with the advertised flat periodic prices for its music plans without disclosing the U.S. Music Royalty Fee.  The music plan prices that agents quote to such telephone customers exclude the cost of the U.S. Music Royalty Fee.  At most, agents may say the cost is the advertised or quoted price plus unspecified

"Fees and Taxes."  SiriusXM knows and intends that a reasonable consumer would interpret the phrase "Fees and Taxes" to mean only taxes or government-related fees.

    **E.**    **SiriusXM Continues to Deceive Customers After They Sign Up.**

58.    SiriusXM continues to deceive customers about the true price of its music plans and the existence and nature of the U.S. Music Royalty Fee even after customers have signed up for a plan.

59.    SiriusXM has implemented policies and practices which prevent its subscribers from noticing that they are being charged the Fee.  For example, after the initial signup email, SiriusXM never thereafter sends the subscriber periodic bills or itemized payment receipts.

60.    In fact, the sole billing document the subscriber may ever receive which mentions the existence of the U.S. Music Royalty Fee is that initial signup email (which is sent immediately after the customer signs up), where the mention is buried toward the bottom.  This signup email contains no explanation whatsoever of the Fee, not even in the fine print.

61.    Meanwhile, if the customer were to log into his or her customer account dashboard on the SiriusXM website, the default view shows only the total amount due and does not list, let alone explain, the U.S. Music Royalty Fee.

62.    Even the name of the U.S. Music Royalty Fee is deceptive.  SiriusXM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few consumers who learn about its existence) that it is a government-related fee, when in fact it is just another profit center for SiriusXM.

    **1.**    **In Order to Prevent Subscribers From Learning of Its Scheme, SiriusXM Signs Up Customers for Auto-Renewal by Default and Then Never Sends Customers Periodic Bills or Receipts.**

63.    SiriusXM's automatic renewal and billing process is designed to prevent its subscribers from learning of its U.S. Music Royalty Fee scheme.  SiriusXM signs up customers

for automatic renewal by default (most customers have monthly plans, but SiriusXM also offers quarterly, semi-annual, and annual plans).  And after the initial signup email, SiriusXM <u>never</u> thereafter emails the customer any bills—or even receipts—of the ongoing charges.

64.     In fact, most SiriusXM customers initially sign up with SiriusXM by providing their credit card for a free multi-month trial or for a multi-month, greatly discounted promotional rate.  SiriusXM's policy of never sending periodic billing notices includes failing to send any notice of the pending expiration of a consumer's multi-month free trial or promotional rate prior to charging that customer the higher rate.

65.     The only evidence of the monthly (or other subscription term) charges by SiriusXM that a customer may receive is on his or her bank or credit card billing statement— which only lists a total dollar amount and makes no mention of the U.S. Music Royalty Fee.

66.     It is telling that while SiriusXM intentionally sends <u>zero</u> periodic billing notices or invoices to its subscribers, SiriusXM meanwhile makes sure to inundate and benumb these same subscribers with <u>marketing</u> emails nearly every other day (totaling over a dozen each month), such that subscribers come to assume that <u>any</u> emails they receive from SiriusXM are marketing or promotional emails.

### 2.     If a Subscriber Notices and Asks About the Fee, SiriusXM Agents Falsely Say That the Fee Is Government-Related or Outside of SiriusXM's Control.

67.     In the event that a subscriber happens to notice that the U.S. Music Royalty Fee has been charged and then contacts SiriusXM to inquire about the Fee, SiriusXM agents falsely tell the subscriber that the Fee is a government-related fee and/or that is outside of SiriusXM's control.

68.     For example, on March 10, 2023, Plaintiff Christopher Carovillano logged into the SiriusXM website to cancel his subscription after he learned about the existence of the U.S.

Music Royalty Fee.  Plaintiff Carovillano clicked a link to start a chat with an online customer service agent.  Plaintiff Carovillano told the agent that he wanted to cancel his subscription and that he wanted the U.S. Music Royalty Fees he had paid to be refunded to him.

69.     The SiriusXM chat agent responded by falsely stating that the U.S. Music Royalty Fee was "government mandated."  The agent told him that the Fees he had paid could not be refunded.  The agent tried to prevent Plaintiff Carovillano from cancelling by offering him a lower promotional rate for his current music plan "plus fees and taxes," but Plaintiff rejected the offer and demanded that the agent terminate his service.

70.     The chat agent's statement that the U.S. Music Royalty Fee was "government mandated" reflects SiriusXM's policy of falsely telling customers who ask about the Fee that it is a government-related fee and/or is outside of SiriusXM's control.

## V.     PLAINTIFFS' FACTUAL ALLEGATIONS

71.     All Plaintiffs are current customers of SiriusXM, or were during the relevant class period.  All Plaintiffs signed up for their SiriusXM music plans on the phone with a SiriusXM agent.

72.     When Plaintiffs purchased their music plans, SiriusXM prominently advertised and quoted to them that their plans would cost a particular periodic price.  SiriusXM did not disclose to Plaintiffs, at any time before or when they signed up, that it would charge them a U.S. Music Royalty Fee in addition to the advertised and promised price.  Moreover, Plaintiffs never agreed to pay a U.S. Music Royalty Fee to SiriusXM.

73.     Despite this, SiriusXM has charged, and/or continues to charge, a U.S. Music Royalty Fee to each Plaintiff on a periodic basis.

74.     SiriusXM never adequately disclosed the U.S. Music Royalty Fee to Plaintiffs in any form or fashion, and Plaintiffs never agreed to pay the U.S. Music Royalty Fee to SiriusXM. In fact, Plaintiffs were not aware of the existence of the Fee until well after they signed up for service, if at all.

75.     Specifically, SiriusXM never provided Plaintiffs with notice or adequate notice that they would be (or were being) charged the U.S. Music Royalty Fee—not at sign-up, not on any periodic bill or invoice, not via mail or email, not on SiriusXM's website, or otherwise. Further, SiriusXM did not provide Plaintiffs with any information regarding the true nature or basis of the U.S. Music Royalty Fee, and never provided Plaintiffs with any opportunity to agree or object to the Fee.  In fact, no Plaintiff ever agreed to pay the U.S. Music Royalty Fee to SiriusXM.

76.     Instead, SiriusXM silently and automatically charged the undisclosed, extra-contractual Fee to Plaintiffs' credit or debit cards, without giving them any mail, email, or other notice whatsoever of said charges and without ever sending them a single billing statement or itemized receipt.

77.     Indeed, SiriusXM has <u>never</u> mailed or emailed Plaintiffs a single periodic billing statement or receipt since they signed up.  But meanwhile, SiriusXM has inundated Plaintiffs' email inbox with a dozen or so marketing and promotional emails each and every month.  In other words, since Plaintiffs signed up for their music plans, SiriusXM has sent <u>zero</u> periodic billing notices or itemized receipts to Plaintiffs, while at the same time sending them <u>dozens</u> of marketing emails promoting various features and upsells.  None of these marketing emails made any mention whatsoever of the existence of the U.S. Music Royalty Fee.

78.     Moreover, SiriusXM misrepresented the true nature of the U.S. Music Royalty Fee, as described herein.

79.     Because the U.S. Music Royalty Fee was not included in the quoted price for Plaintiffs' music plans, SiriusXM has for years been charging Plaintiffs more than what Plaintiffs agreed and contracted to pay for their music plans, and the promised plan price that SiriusXM advertised and quoted to each Plaintiffs was false.  SiriusXM concealed and failed to disclose the true price of its music plans to Plaintiffs.

80.     Plaintiffs did not expect (and were never told) that SiriusXM would charge them a U.S. Music Royalty Fee on top of the advertised and promised music plan prices or that the true price of the music plans they had agreed to purchase would include an extra-contractual, unilaterally-imposed U.S. Music Royalty Fee.  That information was material to Plaintiffs.  Had Plaintiffs known that information, they would not have been willing to pay as much for their music plans, would not have purchased music plans at all, and/or would have acted differently.

81.     Plaintiffs seek recovery of the full amounts of the U.S. Music Royalty Fees which were charged by and which they paid to SiriusXM.

82.     Plaintiffs have a legal right to rely now, and in the future, on the truthfulness and accuracy of SiriusXM's representations and advertisements regarding the prices of its music plans.  Plaintiffs believe that they were given the services that SiriusXM promised them—just not at the prices that SiriusXM promised and advertised to them, which Plaintiffs agreed to pay.

83.     Plaintiffs will continue their SiriusXM service and/or will sign up for SiriusXM music plans in the future.  However, Plaintiffs want to be confident that the advertised and quoted prices for SiriusXM's music plans are the true and full prices for those plans (i.e., that the prices include all applicable discretionary fees such as the U.S. Music Royalty Fee), and that all

discretionary fees like the U.S. Music Royalty Fee are fully and adequately disclosed.  And, if

SiriusXM introduces any new or invented discretionary fees (like it did with the U.S. Music

Royalty Fee), Plaintiffs want to be confident that SiriusXM will include the amount of those fees

in the advertised and quoted music plan prices, and that such fees are included in the music plan

price before Plaintiffs and other customers sign up for and agree to purchase SiriusXM's

services, so that Plaintiffs can agree and/or consent to such fees.  Plaintiffs will be harmed if, in

the future, they are left to guess as to whether SiriusXM's representations are accurate, whether

there are omissions and misrepresentations of material facts regarding the music plans being

advertised and represented to them, and/or whether SiriusXM will unilaterally charge them more

money than they agreed to pay for a particular music plan.

## VII.   CLASS ALLEGATIONS

84.   Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2), and (b)(3), seeking damages, statutory penalties, and injunctive relief

under New York state law on behalf of themselves and all members of the following proposed

nationwide class:

> **All current and former SiriusXM subscribers in the United States who
> signed up for a music plan on the phone with SiriusXM, and who paid a
> "U.S. Music Royalty Fee" within the applicable statute of limitations,
> specifically excluding citizens of California, New Jersey and Washington.**

85.   Plaintiffs also seek certification of the following New York subclass:

> **All current and former SiriusXM subscribers in New York who signed up for
> a music plan on the phone with SiriusXM, and who paid a "U.S. Music
> Royalty Fee" within the applicable statute of limitations.**

86.   **Application of the Discovery Rule.**  This Court should apply the discovery rule

to extend any applicable limitations period (and the corresponding class period) to the date on

which SiriusXM first began charging the U.S. Music Royalty Fee (which, based on the

investigation of Plaintiffs' counsel, was in 2009).  The nature of SiriusXM's misconduct was non-obvious and intentionally concealed from its subscribers.  As a result of SiriusXM's intentional misconduct, omissions, and affirmative misrepresentations throughout the customer lifecycle, neither Plaintiffs nor the Class members could have, through the use of reasonable diligence, learned of the accrual of their claims against SiriusXM at an earlier time.

87.     Specifically excluded from the Classes are SiriusXM and any entities in which SiriusXM has a controlling interest, SiriusXM's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

88.     Plaintiffs reserve the right to redefine the Classes prior to class certification.

89.     **Numerosity.**  The members of each Class are so numerous that joinder of all members would be impracticable.  While Plaintiffs do not know the exact number of Class members prior to discovery, upon information and belief, there are approximately 28 million members in the nationwide Class (which excludes citizens of California, New Jersey and Washington), and there are at least 2 million members in the New York subclass.  The exact number and identities of Class members are contained in SiriusXM's records and can be easily ascertained from those records.

90.     **Commonality and Predominance.**  All claims in this action arise exclusively from the uniform policies and procedures of SiriusXM as outlined herein.  This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case.  These common questions predominate over any questions affecting individual Class members, if any.  These common questions include, but are not limited to, the following:

        a.      Whether SiriusXM employs a uniform policy of charging the U.S. Music Royalty Fee to its customers;

        b.      Whether SiriusXM's policy and practice of advertising and quoting the prices of its music plans without including the amount of the U.S. Music Royalty Fee is false, deceptive, or misleading;

        c.      Whether SiriusXM adequately and accurately disclosed the existence of the U.S. Music Royalty Fee, its nature or basis, or its amount, to Plaintiffs and Class members;

        d.      What is the nature or purpose of the U.S. Music Royalty Fee;

        e.      Whether it was deceptive, misleading, and/or false for SiriusXM to add "U.S." at the beginning of the name of the U.S. Music Royalty Fee;

        f.      Whether the true prices of SiriusXM's music plans, and of the U.S. Music Royalty Fee, are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

        g.      Whether it is a deceptive act or practice for SiriusXM to sign up subscribers for automatic renewal and send them a single initial sign-up email, but to never thereafter send the subscriber any periodic billing notices, bills or receipts;

        h.      Whether SiriusXM has a policy of intentionally preventing subscribers from noticing that they are being charged the Fee, including, but not limited to, SiriusXM's practice of signing up subscribers for automatic renewal but then never thereafter sending the subscriber any periodic billing notices, bills or receipts, and if so whether this practice is deceptive;

i.     Whether SiriusXM's practice of not providing a notice of the pending expiration of a consumer's multi-month free trial or promotional rate prior to charging that customer the higher rate is deceptive and/or is intended by SiriusXM to reduce the likelihood of subscribers noticing that they are being charged a higher price;

j.     Whether SiriusXM has a policy and practice of falsely telling subscribers who notice and inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or that it is outside of SiriusXM's control;

k.     Whether SiriusXM must include the amount of the U.S. Music Royalty Fee in its advertised and quoted service plan prices;

l.     Whether SiriusXM must disclose the existence or amount of the U.S. Music Royalty Fee when signing up consumers for its music plans;

m.     Whether SiriusXM's policy and practice of advertising and quoting the prices of its music plans without including the amount of the U.S. Music Royalty Fee is false, deceptive, and/or misleading;

n.     Whether it was deceptive or unfair for SiriusXM not to disclose, or to inadequately or inaccurately disclose, the U.S. Music Royalty Fee or its dollar amount as part of the advertised and promised price of its music plans;

o.     Whether it was deceptive, unfair, or unconscionable for SiriusXM to unilaterally charge its customers the extra-contractual U.S. Music Royalty Fee, which Fee the customers never agreed to pay, or to unilaterally charge its customers more than they agreed to pay for their music plans;

p.     Whether a reasonable consumer is likely to be deceived by SiriusXM's conduct, misrepresentations, and omissions alleged herein;

q.      Whether New York law applies to the claims of Plaintiffs and the Class;

r.      Whether SiriusXM's misrepresentations, omissions, and deceptive acts and practices alleged herein constitute unjust enrichment;

s.      Whether SiriusXM has violated the implied covenant of good faith and fair dealing, implied in its contracts with Plaintiffs and the Class, by imposing the U.S. Music Royalty Fee;

t.      Whether SiriusXM's misrepresentations, omissions, policies, and conduct alleged herein constitute deceptive acts or practices in violation of New York General Business Law § 349;

u.      Whether SiriusXM's misrepresentations, omissions, policies, and conduct alleged herein constitute false advertising in violation of New York General Business Law § 350; and

v.      Whether Plaintiffs and the Class are entitled to an order enjoining SiriusXM from engaging in the misconduct alleged herein, and from continuing to charge the U.S. Music Royalty Fee without adequately disclosing to and obtaining the consent of its customers.

91.      **Typicality.**  Plaintiffs, like all Class members, are current or former subscribers of SiriusXM's music plans who signed up by phone and have been charged higher periodic rates than advertised and quoted at the time of sign-up due to SiriusXM's unilateral and extra-contractual imposition of the undisclosed U.S. Music Royalty Fee.  Their claims all arise from the same course of conduct by SiriusXM, are based on the same legal theories, and face the same potential defenses.  Plaintiffs' claims are typical of all Class members' claims.  Plaintiffs are

31

each a member of the Classes they seek to represent.  All claims of Plaintiffs and the Class arise from the same course of conduct, policy and procedures as outlined herein.

92.  **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests.  Plaintiffs seek the same relief for themselves as for every other Class member, have no interests antagonistic to Class members' interests, and are committed to representing the best interests of the Class.  Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

93.  **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy.  Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for SiriusXM's conduct.  Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.  Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct by SiriusXM.  A single adjudication would create economies of scale and comprehensive supervision by a single judge.  Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial in this case.

94.  By its conduct and omissions alleged herein, SiriusXM has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate respecting each Class as a whole.

95.     Without the proposed class action, SiriusXM will retain the benefits of its wrongdoing and will likely continue the complained-of practices, which will result in further damages to Plaintiffs and Class members.

## CAUSES OF ACTION

### COUNT I

**Violations of New York General Business Law § 349**

96.     Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

97.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

98.     In its sale of music plans and satellite radio services from its headquarters in New York to customers in New York and throughout the United States, SiriusXM conducted business and trade within the meaning and intendment of New York General Business Law § 349.

99.     Plaintiffs and Class members are each consumers who purchased services from SiriusXM for their personal use.

100.    By the acts and omissions alleged herein, SiriusXM has engaged in deceptive and misleading acts and practices designed to sell its music plans at prices higher than it advertised and promised to consumers, and to covertly and improperly squeeze additional money from its customers for its own profit by unilaterally imposing the undisclosed, extra-contractual U.S. Music Royalty Fee.

101.    By reason of this conduct, SiriusXM has engaged and continues to engage in deceptive acts and practices in violation of the New York General Business Law § 349.

102.    SiriusXM's deceptive acts, misrepresentations, and omissions have a tendency to deceive, and in fact deceived, the general public, including Plaintiffs and the Class.

103.    SiriusXM's deceptive acts, misrepresentations, and omissions were and are material, in that they were likely to, and did in fact, mislead reasonable consumers acting reasonably under the circumstances.

104.    Although not required by New York law, Plaintiffs and Class members reasonably relied on SiriusXM's material misrepresentations, omissions, and deceptive policies and practices, and would not have purchased services from SiriusXM, or would not have paid as much for said services, had they known the truth about SiriusXM's policies and practices.

105.    SiriusXM knowingly and willingly committed these deceptive acts and practices for its own profit and for the profit of its shareholders.

106.    As a direct and proximate result of SiriusXM's deceptive actions, Plaintiffs and Class members have been harmed and have lost money or property in the amount of the undisclosed, extra-contractual U.S. Music Royalty Fees that they paid to SiriusXM.

107.    SiriusXM's actions were the direct, foreseeable, and proximate cause of the damages that Plaintiffs and the Class have sustained from having paid for and consumed SiriusXM's services.

108.    As a result of SiriusXM's deceptive actions and practices, Plaintiffs and the Class members have suffered damages and are entitled to recover those damages or $50, whichever is greater.  Plaintiffs and Class members are also entitled to treble damages up to $1,000 because SiriusXM willfully and knowingly committed deceptive acts and practices in violation of New York General Business Law § 349.  Plaintiffs and Class members are also entitled to an injunction to halt SiriusXM's unlawful deceptive practices and to initiate a program to provide refunds and/or restitution to Plaintiffs and the Class.  Plaintiffs are also entitled to reasonable attorneys' fees from SiriusXM.

## COUNT II

### Violations of New York General Business Law § 350

109.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

110.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

111.    SiriusXM's material misrepresentations, omissions, and failures to disclose as described herein also constitute false advertising in violation N.Y. Gen. Bus. Law § 350, which broadly declares unlawful all **"[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."**

112.    Section 350-e allows any person who has been injured by any violation of section 350 or section 350-a to bring an action to recover actual damages or $500, whichever is greater, as well as to obtain an injunction to enjoin the unlawful false advertising. N.Y. Gen. Bus. Law § 350-e(3).

113.    By the acts and omissions alleged herein, including, *inter alia*, advertising and promising prices for its music plans that were not the true prices that it ultimately charged to customers, and failing to disclose the existence or amount of the U.S. Music Royalty Fee in its advertisements, SiriusXM has directly violated New York General Business Law § 350, causing damage to Plaintiffs and the Class.

114.    By reason of this conduct, SiriusXM has engaged in false advertising in violation of the New York General Business Law § 350.

115.    SiriusXM's false advertising has a tendency to deceive, and in fact deceived, the general public, including Plaintiffs and the Class.

116.    SiriusXM's false advertising is and was material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

117.    Although not required by New York law, Plaintiffs and Class members reasonably relied on SiriusXM's false advertising, and would not have purchased services from SiriusXM, or would not have paid as much for said services, had they known the truth about SiriusXM's policies and practices, and specifically had they known that SiriusXM's advertised and promised prices were false.

118.    SiriusXM knowingly and willingly made these false advertisements and misrepresentations for its own profit and for the profit of its shareholders.

119.    As a direct and proximate result of SiriusXM's false advertising, Plaintiffs and Class members have been harmed and have lost money or property in the amount of the U.S. Music Royalty Fees they paid to SiriusXM.

120.    SiriusXM's actions were the direct, foreseeable, and proximate cause of the damages that Plaintiffs and the Class have sustained from having paid for and consumed SiriusXM's services.

121.    As a result of SiriusXM's false advertising, Plaintiffs and each Class member have suffered damages and are therefore entitled to recover those damages or $500 per person (whichever is greater).  Plaintiffs and each Class member are also entitled to treble damages up to $10,000 because SiriusXM willfully and knowingly conducted false advertising in violation of New York General Business Law § 350.  Plaintiffs and each Class member are also entitled to an injunction to halt SiriusXM's unlawful false advertising and to initiate a program to provide

refunds and/or restitution to Plaintiffs and the class. Plaintiffs are also entitled to reasonable attorney's fees from SiriusXM.

## COUNT III

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

122.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

123.    SiriusXM has violated the covenant of good faith and fair dealing by its conduct alleged herein, which includes but is not limited to:  unilaterally imposing the undisclosed, extra-contractual U.S. Music Royalty Fee; misrepresenting the prices of its music plans and concealing the true prices of its music plans in its advertising; misrepresenting the prices of its music plans by advertising or quoting prices that did not include the U.S. Music Royalty Fee; failing to disclose or adequately disclose the existence, amount, or nature of the U.S. Music Royalty Fee; and misrepresenting to members of the public that its own discretionary service charges are taxes, government or regulatory fees, charges imposed to recover costs billed to SiriusXM by the government, and/or charges over which SiriusXM has no control.

124.    Alternatively, to the extent any applicable contract could be read as granting SiriusXM discretion to impose the U.S. Music Royalty Fee—which Plaintiffs do not concede—that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by New York law.

125.    SiriusXM has abused any discretion it purportedly had under any applicable contract to impose the U.S. Music Royalty Fee on Plaintiffs and Class members.  For example:

a.    SiriusXM imposed the U.S. Music Royalty Fee as a covert way to charge customers higher rates without having to advertise such higher rates;

b.      SiriusXM does not include the amount of the U.S. Music Royalty Fee in the advertised and quoted prices for its music plans;

c.      SiriusXM fails to disclose the Fee—or to even mention the words "U.S. Music Royalty Fee"—in any SiriusXM advertising, including in the fine print;

d.      SiriusXM's sole disclaimer is that "Fees and taxes apply," but in reality zero other fees apply (and in most states, such as New York, zero taxes apply), such that vast majority, if not all, of the purported "Fees and taxes" charged is the undisclosed U.S. Music Royalty Fee;

e.      None of SiriusXM's competitors charge any separate royalty fee above and beyond their advertised music plan prices, such that SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone hide it as "Fees and Taxes";

f.      To prevent subscribers from noticing they are being charged the U.S. Music Royalty Fee, SiriusXM has a policy and practice of signing up subscribers for automatic renewal by default and never thereafter sending the subscriber any periodic bills or itemized receipts;

g.      SiriusXM put "U.S." in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related fee; and

h.      SiriusXM has a policy of falsely telling customers who notice and inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or that it is outside of SiriusXM's control.

126.     SiriusXM's imposition of the U.S. Music Royalty Fee defied customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement.  SiriusXM's conduct and actions alleged herein were done in bad faith.

127.     SiriusXM's conduct described herein has had the effect, and the purpose, of denying Plaintiffs and Class members the full benefit of their bargains with SiriusXM.

128.     Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with SiriusXM.  There is no legitimate excuse or defense for SiriusXM's conduct.

129.     Any attempts by SiriusXM to defend its overcharging through reliance on supposed contractual provisions will be without merit.  Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and/or are unenforceable in light of the hidden and deceptive nature of SiriusXM's misconduct, among other reasons.  Any such provisions would not excuse SiriusXM's abuses of discretion or otherwise preclude Plaintiffs and the Class from recovering for breaches of the covenant of good faith and fair dealing.

130.     Plaintiffs and members of the Class sustained damages as a result of SiriusXM's breaches of the covenant of good faith and fair dealing.  Plaintiffs seek damages in the amount of the U.S. Music Royalty Fees paid by Plaintiffs and the Class members.

## COUNT IV

### Unjust Enrichment

131.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

132.    By the acts alleged herein, Plaintiffs and the Class members have conferred substantial benefits on SiriusXM, and SiriusXM has knowingly and willingly accepted and enjoyed these benefits.

133.    SiriusXM either knew or should have known that the payments rendered by Plaintiffs and the Class members were given and received with the expectation that the services would be provided at the price represented and warranted.  Despite this, SiriusXM demanded and collected from Plaintiffs and Class members amounts which were higher than what SiriusXM previously quoted and promised, and SiriusXM disguised and/or misrepresented the nature of those extra charges to Plaintiffs and the Class members.

134.    For SiriusXM to retain the benefit of the excess payments under these circumstances is inequitable.

135.    SiriusXM, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of its music plans, reaped benefits, which resulted in SiriusXM's wrongful receipt of profits.

136.    Equity demands disgorgement of SiriusXM' ill-gotten gains.  SiriusXM will be unjustly enriched unless it is ordered to disgorge those profits for the benefit of Plaintiffs and the Class members.

137.    As a direct and proximate result of SiriusXM's wrongful conduct and unjust enrichment, Plaintiffs and the Class members are entitled to the institution of and restitution from a constructive trust disgorging all profits, benefits, and other compensation obtained by SiriusXM through this inequitable conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

A. Certify the case as a class action and appoint Plaintiffs and their counsel to represent the Classes;

B. Declare that Defendant is financially responsible for notifying all Class members of Defendant's deceptive and unconscionable business practices alleged herein;

C. Find that New York law applies to the claims of Plaintiffs and the Class members;

D. Find that Defendant's conduct alleged herein be adjudged and decreed in violation of the New York laws cited above;

E. Declare that Defendant's policy of charging a deceptive, extra-contractual, and undisclosed U.S. Music Royalty Fee to be a violation of New York law;

F. Permanently enjoin Defendant from engaging in the misconduct alleged herein;

G. Permanently enjoin Defendant from charging the U.S. Music Royalty Fee without adequately disclosing said Fee to its customers and obtaining consent therefor;

H. Retain jurisdiction to monitor Defendant's compliance with the permanent injunctive relief;

I. Order Defendant to hold in constructive trust all U.S. Music Royalty Fee payments received from the Class;

J. Order Defendant to perform an accounting of all U.S. Music Royalty Fee payments it collected;

K. Enter judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

L. Award Plaintiffs and the Class members statutory, treble, and punitive damages;

M.   Award Plaintiffs reasonable attorneys' fees and costs; and

N.   Grant such other and further legal and equitable relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

PLEASE TAKE NOTICE that the Plaintiffs hereby demand a trial by jury as to all parties.

Dated:  June 5, 2023                    BY:  _____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq. (SD-0016)
315 Madison Ave., 3rd Fl.
New York, NY 10017
Telephone: (646) 979-3642
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

HATTIS & LUKACS
Daniel M. Hattis, Esq.*
Paul Karl Lukacs, Esq.*
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

* Pro Hac Vice Application To Be Submitted

*Attorneys for Plaintiffs and the Proposed Classes*