UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER CAROVILLANO *and* STEVEN
BRANDT, *on behalf of themselves and all others similarly
situated*,

                                        Plaintiffs,

                        -v-

SIRIUS XM RADIO INC.,

                                        Defendant.

23 Civ. 4723 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this putative class action, plaintiffs allege that defendant Sirius XM Radio Inc. ("Sirius XM") promises its telephonic subscribers a particular monthly price, only to charge them an undisclosed 21.4% fee (the "U.S. Royalty Fee" or the "Fee") on top of the agreed-upon price. Dkt. 1 ("Compl.") ¶¶ 1, 42–43. Plaintiffs allege that such conduct violates New York General Business Law ("GBL") §§ 349 and 350, breaches the implied covenant of good faith and fair dealing, and unjustly enriches Sirius XM. *Id.* ¶¶ 96–137. Sirius XM counters that the Fee is "clearly disclose[d]" in its online materials, such that no "reasonable consumer[]" would be "misled." Dkt. 10 ("Def. Br.") at 7, 19.

Pending now is Sirius XM's motion to dismiss plaintiffs' Complaint. The Complaint centrally alleges that Sirius XM fails to inform subscribers who sign up by telephone of the Fee before their purchase, and that Sirius XM only references the Fee in obscure and inadequate terms on its website. At this stage, accepting the Complaint's well-pled factual allegations as true, the Court finds that these plausibly allege that Sirius XM's disclosures about the Fee were misleading, in violation of GBL §§ 349 and 350. As a result, the Court denies Sirius XM's

motion in substantial part, granting it only as to the Complaint's unjust-enrichment claims and claims for injunctive relief.

## I.     Background

### A.     Factual Background[1]

#### 1.     The Parties

Plaintiff Christopher Carovillano is a former Sirius XM subscriber.  Compl. ¶¶ 13, 68–69.

Plaintiff Steven Brandt is a current Sirius XM subscriber.  *Id.* ¶ 14.  Both plaintiffs are citizens of

New York.  *Id.* ¶¶ 14–15.  Both plaintiffs signed up for their respective Sirius XM music plan

---

[1] The Court draws the facts in this decision principally from the Complaint and the agreements that are incorporated by reference in the Complaint or are integral to it.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  For purposes of the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in plaintiffs' favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

"[D]istrict courts may 'permissibly consider documents other than the complaint' for the truth of their contents if they 'are attached to the complaint or incorporated in it by reference.'"  *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  Plaintiffs did not attach full copies of Sirius XM's Customer Agreement nor its confirmation emails.  However, the Complaint references and relies on both.  *See* Compl. ¶¶ 13–14 (alleging that both plaintiffs "received" and were "directed to the same uniformly-worded documents, emails, and/or websites described herein"), 59–60 (referring to the "initial signup email," which discloses the existence of the Fee), 41–42, 45–46, 50–54 (excerpting webpages that reference the Customer Agreement).  The Complaint's "clear, definite and substantial reference to the documents" incorporates each by reference. *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  Moreover, given the centrality of the documents to the Complaint's allegations, both are "integral" to it and thus properly before the Court. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  As the Second Circuit has explained, when a plaintiff claims that a defendant "fail[ed] to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the [relevant] document[s] to see whether or not those facts were disclosed." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The Customer Agreement is attached in the supporting papers of Sirius XM's motion to dismiss, *see* Dkt. 13 ("Stephens Decl."), Ex. 1, as is the standard confirmation email, *see* Dkt. 12 ("Weiss Decl."), Ex. 1.

over the telephone.  *Id.*  And both plaintiffs paid the Fee while Sirius XM subscribers; Brandt, as a current subscriber, continues to pay the Fee.  *Id.*

Defendant Sirius XM is a Delaware corporation with its principal place of business in New York.  *Id.* ¶ 16.  Sirius XM offers subscription services, most prominently satellite-radio plans, to approximately 34 million consumers nationwide.  *Id.* ¶ 22.  Most of Sirius XM's subscribers listen to its satellite-radio channels while driving—by one estimate, Sirius XM satellite radios are pre-installed in 84% of all new automobiles, with each buyer automatically provided a free trial.  *Id.* ¶ 25; *see also id.* ¶¶ 26–28.  These free trials are critical to Sirius XM's business model, which "relies on converting these millions of vehicle buyers from free trial users into paid subscribers of automatically renewing music plans."  *Id.* ¶ 26.

### 2.    Sirius XM's Subscription Plans

Once a new-car buyer's free trial ends, he is "inundate[d]" by Sirius XM with "marketing emails, direct mailers, and telemarketing calls" encouraging him to sign up for one of its paid plans.  *Id.* ¶ 28.  The plans differ in several respects.  Each plan includes a different selection of over 425 channels, ranging from "[a]d-free music" channels to "[n]ews & issues" channels to "Howard Stern Channels."  *Id.* ¶ 49.  The plans are advertised at different rates—ranging from its most expensive, "Platinum," to its most affordable, "Music Showcase."  *Id.*  Often, Sirius XM will offer a promotional price (for instance, "3 mos. for $1 then $23.99/mo.") to encourage former Sirius XM users to return to the fold with an automatically renewing subscription.  *Id.* ¶¶ 32, 49.

As alleged, these headline rates, however, do not take into account an additional charge. Since 2009, Sirius XM has charged what it calls the "U.S. Music Royalty Fee" (the "Fee"), a flat-rate charge imposed at Sirius XM's sole discretion.  *Id.* ¶ 30.  The Fee has increased over

time.  *Id.*  At present, the Fee is a "uniform additional 21.4% charge" included "over and above the advertised and quote price of each music plan."  *Id.*  (Thus, a customer promised "3 mos. for $1" will, in fact, pay $1.21 per month.  And once that customer's three-month promotional rate expires, he will not pay $23.99 per month, but instead $29.12 per month.)  The Fee is a key profit center for Sirius XM.  *See id.* ¶¶ 7, 31, 56, 62.  In 2022, the Fee was responsible for $1.36 billion in revenue—122% of Sirius XM's net profits for the year.  *Id.* ¶¶ 7, 31.

### 3.    Sirius XM's Promotional Materials

The Complaint alleges that Sirius XM fails to adequately disclose the Fee in its written promotional materials.

A standard Sirius XM mailer, with a prominently displayed promotional rate, appears below:



Compl. ¶ 41.  The mailer does not expressly refer to the Fee.  *See id.*  It does, however, state—

within the paragraph at the end of the mailer that begins with the words  "**OFFER DETAILS**"—

that "[f]ees and taxes apply."  *Id.* (emphasis in original).  That paragraph includes the statement:

"**Please see our Customer Agreement at www.siriusxm.com for complete terms**." *Id.*

(emphasis in original).

In relevant part, the Customer Agreement provides:

> **4. Fees**: We may charge you one or more of the following fees, all of which are subject to change without notice:
>
>> . . .
>>
>> **U.S. Music Royalty Fee**: Packages which include music channels may be charged a U.S. Music Royalty Fee. See www.siriusxm.com/usmusicroyalty.

Stephens Decl., Ex. 1 ("Customer Agreement") at 8 (emphasis in original).

In relevant part, the hyperlinked webpage (www.siriusxm.com/usmusicroyalty)

provides:

> The current U.S. Music Royalty Fee is 21.4% of the price of satellite plans* that include music channels.
>
> . . .
>
> 4. How is the U.S. Music Royalty Fee calculated?
>
> The U.S. Music Royalty Fee is based on the entire subscription price of the plan you purchase that includes musical performances.

*Id.*, Ex. 2 ("U.S. Music Royalty Webpage") at 1 (emphasis omitted).

Sirius XM also sends out promotional emails.  A standard such email appears below:



Compl. ¶ 44.  Like the mailer, the email does not expressly refer to the Fee.  *See id.* ¶ 45.  Unlike

the mailer, it does not anywhere mention the existence of fees at all.  *Id.*  The phrase "See Offer

Details" (rendered in white text against a pink backdrop) is a hyperlink.  *Id.*  A customer who clicks that link is taken to the following webpage:



*Id.*  This page, like the mailer, does not expressly refer to the Fee, but it does state that "Fees & taxes apply," and it directs customers to "our Customer Agreement," as quoted above.  *Id.*

### 4.   The Sign-Up Process

To subscribe, a prospective customer may either call Sirius XM or sign up online.  *See id.* ¶¶ 51–52, 57.  The two plaintiffs here, Carivallano and Brandt, seek to represent a putative class of subscribers who signed up by telephone.  *Id.* ¶¶ 84–85.  For such subscribers, the Complaint alleges, Sirius XM never "disclose[s] . . . , at any time before or when they signed up, that it [will] charge them a U.S. Music Royalty Fee in addition to the advertised and promised price." *Id.* ¶ 72.  Instead, customer-service agents "present telephone customers with the advertised flat periodic prices for its music plans without disclosing the U.S. Music Royalty Fee."  *Id.* ¶ 57.  "At most, agents may say the cost is the advertised or quoted price plus unspecified 'fees and taxes.'" *Id.*

All new subscribers receive a confirmation email from Sirius XM.  *See id.* ¶¶ 58–60. That, the Complaint alleges, is the "sole billing document" a subscriber "may ever receive which mentions the existence of the U.S. Music Royalty Fee."  *Id.* ¶ 60.  An excerpt of the standard confirmation email appears below:



This email confirms your recent SiriusXM account transaction.

---

Thank you for activating a SiriusXM subscription. A summary of your activity for MM/DD/YYYY is below. If your radio isn't receiving service, please click here to refresh your signal. To begin streaming online, click here and input your SiriusXM username listed below.

**Account Details**

| | |
|---|---|
| SiriusXM Account Number | SAMPLE |
| SiriusXM Username | SAMPLE |
| Radio ID/ESN | SAMPLE |
| Streaming Username | SAMPLE |
| Credit/Debit Card | SAMPLE |

**Today's Transaction Details**

| Package/Plan | Subscription Term | Charges |
|---|---|---|
| Sirius Music & Entertainment ($5.99/Month for 12 Months) | MM/DD/YYYY - MM/DD/YYYY | $5.99 |
| SiriusXM Video (1 Month) | MM/DD/YYYY - MM/DD/YYYY | $0.00 |
| U.S. Music Royalty Fee | | $1.28 |
| State & Local Taxes | | $0.36 |

| | |
|---|---|
| Current Charges | $7.63 |
| Previous Balance/Adjustments | ($7.63) |
| Total Charges | $0.00 |
| Ending Account Balance | $0.00 |

Weiss Decl., Ex. 1 at 1.  Because Sirius XM does not send any "periodic billing notices or invoices to its subscribers," plaintiffs allege that its subscribers often learn of Sirius XM's hidden

fees by inspecting their "bank or credit card billing statement."  Compl. ¶¶ 65–66.  The Complaint alleges that Sirius XM customer-service agents are instructed to tell those subscribers who do find out about the Fee "that the Fee is a government-related fee and/or that [it] is outside of Sirius XM's control."  *Id.* ¶ 67.

### B.    Allegations and Procedural History of This Case

On June 5, 2023, plaintiffs Carovillano and Brandt filed this action, asserting subject matter jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Dkt. 1 ("Compl.").  Plaintiffs allege that Sirius XM's disclosures (or lack thereof) with respect to the Fee violate New York General Business Law ("GBL") §§ 349 and 350, breach the implied covenant of good faith and fair dealing, and unjustly enrich Sirius XM.  *Id.* ¶¶ 96–137.  Plaintiffs seek to represent a "nationwide class" (excluding California, New Jersey, and Washington residents) of "[a]ll current and former Sirius XM subscribers in the United States who signed up for a music plan on the phone" and paid the Fee "within the applicable statute of limitations." *Id.* ¶ 84.  They also seek to represent a "New York subclass" of "[a]ll current and former Sirius XM subscribers in New York who signed up for a music plan on the phone" and paid the Fee during the same period.  *Id.* ¶ 85.  Plaintiffs seek monetary damages and injunctive relief.  *See id.* at 41– 42.

On August 18, 2023, Sirius XM moved to dismiss the Complaint.  Dkt. 9.  Sirius moved to dismiss all claims for failure to state a claim under Rule 12(b)(6) and moved to dismiss the claims for injunctive relief for lack of subject matter jurisdiction under Rule 12(b)(1).  Sirius XM filed a memorandum of law in support, Dkt. 10 ("Def. Br."), as well as three declarations, each with several exhibits, Dkts. 11 ("Cristofaro Decl."), 12 ("Weiss Decl."), 13 ("Stephens Decl.").  On August 21, 2023, the Court directed plaintiffs to either amend the Complaint or oppose the

motion to dismiss by September 8, 2023, Dkt. 14, a deadline later extended to October 16, 2023.
Dkt. 16.  On October 16, 2023, plaintiffs filed a memorandum of law in opposition to the motion
to dismiss.  Dkt. 17 ("Pl. Br.").  On November 7, 2023, Sirius XM filed its reply.  Dkt. 18 ("Def.
Reply Br.").

## II.    Applicable Legal Standards

### A.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough
facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where
"the allegations in a complaint, however true, could not raise a claim of entitlement to relief."
*Twombly*, 550 U.S. at 558.  When resolving a motion to dismiss, the Court must assume all well-
pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v.
Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, does not apply to
legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions"
or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at
555.

### B.    Rule 12(b)(1)

In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule
12(b)(1), the Court "must take all facts alleged in the complaint as true and draw all reasonable
inferences in favor of plaintiff."  *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir.
2006).  Once subject matter jurisdiction is challenged, "[a] plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  A district court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova*, 201 F.3d at 113; *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

## III.   Discussion

### A.   GBL §§ 349 and 350 Claims

Sirius XM moves to dismiss, for failure to state a claim under Rule 12(b)(6), plaintiffs' claims for deceptive and unfair trade practices under GBL §§ 349 and 350.

#### 1.   Applicable Legal Principles

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.  N.Y. Gen. Bus. Law § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in the state.  *Id.* § 350.

To state a claim under GBL § 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam).  "The standard for recovery under [GBL] § 350, while specific to false advertising, is otherwise identical to [§] 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).  Given this overlap, "courts have found that the scope of § 350 is as broad as that of § 349, and that its essential elements are the same." *Braynina v. TJX Cos.*, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) (cleaned up); *see also Orlander*

*v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (treating the causes of action as identical); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (same).[2]

### 2.   Application

Sirius XM argues that the Complaint fails to plead the last two elements of §§ 349 and 350: that Sirius' marketing was materially misleading and that the plaintiffs were injured as a result.

#### a.   *Materially misleading*

Whether an act is "materially misleading" under New York law is an objective inquiry. *Orlander*, 802 F.3d at 300.  The decisive question is whether the act is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  Although "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," *Fink*, 714 F.3d at 741, how a hypothetical "reasonable consumer" would react to an advertisement "is generally a question of fact not suited for resolution at the motion to dismiss stage," *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016); *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 315 (N.D.N.Y. 2022); *cf., e.g.*, *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) ("[W]hen the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer.").

---

[2] Claims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239–40 (S.D.N.Y. 2020).

Sirius XM argues that, as a matter of law, its advertising is not materially misleading, because it "fully disclosed" the Fee to consumers.  Def. Br. at 9–16.  Sirius notes that its mailer discloses that "'[f]ees and taxes apply' and instructs would-be purchasers to consult the 'Customer Agreement at www.SiriusXM.com for complete terms.'"  *Id.* at 3 (quoting Compl. ¶ 41).  And, it notes, its promotional email includes a "bold hyperlink" "which, if clicked, leads to page twice noting '[f]ees and taxes apply' and again points consumers to the Customer Agreement."  *Id.* (quoting Compl. ¶¶ 44–45).  On this basis, Sirius argues, it gave plaintiffs "all of the information necessary to understand the practice and its consequences."  *Id.* at 9 (quoting *Rodriguez v. Cheesecake Factory Inc.*, No. 16 Civ. 2006 (JMA) (AKT), 2017 WL 6541439, at *3 (E.D.N.Y. Aug. 11, 2017)).  Its "'complete . . . disclosure' is not misleading," Sirius argues, "even if that disclosure is 'arguably confusing.'"  Def. Reply Br. at 1 (alteration in original) (quoting *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, No. 11 Civ. 4509 (RJS), 2013 WL 1385210, at *8 (S.D.N.Y. Mar. 18, 2013)).  That plaintiffs "refused to examine the information put right before their eyes and easily available at their fingertips," Sirius contends, is fatal to their case.  Def. Br. at 13.

Sirius XM's argument fails to secure dismissal on the pleadings.  New York courts have rejected the argument that a generalized disclaimer as to "additional fees" bars claims asserting the non-disclosure of fees that a reasonable consumer would not expect.  *See, e.g.*, *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 348 (E.D.N.Y. 2008) (complaint stated a claim despite disclaimer that "fees vary," where tax-preparation business failed to disclose 15% fee applied to customers' final invoices); *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (2d Dep't 2008) (same, despite disclaimer of a "dormancy fee," where defendant "failed to clearly and conspicuously disclose" the fee and mentioned it only in fine print); *Relativity*

*Travel, Ltd. v. JP Morgan Chase Bank*, No. 601075/05, 2006 WL 2918081, at *2–3 (N.Y. Sup.

Ct. 2006) (same, despite disclaimer that additional fees may be charged, where bank's website,

ATMs, and other materials failed to list the particular surcharge and bank mentioned it only in its

"extremely long" and "prolix" deposit agreement); *Sims v. First Consumers Nat'l Bank*, 758

N.Y.S.2d 284, 286 (1st Dep't 2003) (same, despite disclaimer that additional fees may be

charged, where "an average reader could not readily locate the disclosures within the material

provided" due to the "typeface and location of the fee disclosures").  Courts in other states have

similarly applied their like statutes.[3]  *See, e.g.*, *New Vision Unlimited, LLC v. Glasses USA, Inc.*,

No. 22 Civ. 22534 (RNS), 2023 WL 3535386, at *3–5 (S.D. Fla. May 18, 2023) (complaint

stated a claim despite disclaimer that a "processing fee" applied, where online retailer advertised

an artificially low price and the fee "nearly doubl[ed] [that] price"); *Schnall v. Hertz Corp.*, 78

Cal. App. 4th 1144, 1150 n.2, 1163–70 (1st Dist. 2000) (same, despite disclaimer in rental

agreement that car-rental company will charge "for fuel and the service of refueling at the

applicable rate," where that rate was "not forthrightly provided" and was specified only in a

"separate document" full of "indecipherable abbreviations").  Sirius XM cannot secure dismissal

on the pleadings on plaintiffs' GBL §§ 349 and 350 claims based on its shorthand and

inconspicuous disclosure that "fees and taxes apply."[4]

---

[3] The Second Circuit has recognized that most state consumer-law statutes are "governed by substantially the same reasonable consumer test."  *Baines v. Nature's Bounty (NY), Inc.*, No. 23 Civ. 710, 2023 WL 8538172, at *2 (2d Cir. Dec. 11, 2023) (summary order); *see also Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 & 474 n.1 (7th Cir. 2020) (noting that the "core prohibitions" of the consumer laws of California, New York, Florida, and other states "are interpreted for the most part interchangeably," in particular as to the bar on "advertising that is likely to deceive a substantial proportion of reasonable consumers").

[4] *See also, e.g.*, *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2020 WL 6564755, at *4 (S.D.N.Y. Nov. 9, 2020) ("[T]erms and conditions cannot as a matter of law overcome deceptive marketing practices."); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941

The cases Sirius XM cites in support of dismissal are not to the contrary. Each stands for the quotidian proposition, not factually implicated here, that a practice is not deceptive when a business provides conspicuous notice of that practice to consumers before purchase. In *Dimond v. Darden Restaurants, Inc.*, No. 13 Civ. 5244 (KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014), for instance, the plaintiff challenged the defendants' inclusion of an automatic gratuity on his restaurant bill. *See id.* at *1–2. The claim failed as a matter of law, as it was undisputed that the surcharge was "completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining . . . prior to voluntarily placing his or her order." *Id.* at *8. Similarly, in *Zuckerman v. BMG Direct Marketing*, 737 N.Y.S.2d 14 (1st Dep't 2002), the plaintiff's claim that he was overcharged for shipping and handling was dismissed because the "defendant's promotional materials set[] forth the exact amount" he would pay for each item. *Id.* at 15. And in *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362 (1st Dep't 1994), the First Department, in dismissing, noted that, whether or not the defendant's "service" fees were "excessive," the customer had always been informed about the final price "prior to the sale of tickets." *Id.* at 363 (cleaned up). These cases are at some remove from the fact pattern at issue here. Here, as alleged, Sirius XM's prominent front-label statements as to the charges the customer would bear ("$5/month for your first 12 mos.") left out any mention of the 21.4% U.S. Royalty Fee. Only elsewhere did it disclose, in smaller print, that "[f]ees and taxes apply." *See, e.g.*, Def. Reply Br. at 3–5. Measured against the specific disclosures held non-misleading in the

---

(2012) (complaint stated a claim despite fine-print disclaimer that wine is sold "as is" where defendant prominently advertised that the wine was rare and valuable: "disclaimers . . . do not establish a defense as a matter of law" and must be viewed in context (quoting *Goshen*, 98 N.Y.2d at 326)).

above cases, Sirius XM's generality that "fees and taxes apply" is notably less conspicuous and complete.

Also off the mark is Sirius XM's defense that, by furnishing customers with its Customer Agreement and identifying via hyperlink its U.S. Music Royalty Webpage, which was available online, it, as a matter of law, gave plaintiffs the tools "necessary to understand" the Fee.  Def. Reply Br. at 3 (quoting *Rodriguez*, 2017 WL 6541439, at *3).  There are cases that have upheld as non-misleading fees and charges that were ascertainable in such fashion.  But these involved fees so commonplace or small that the reviewing court held that a reasonable consumer would not have been surprised to first learn of them by reviewing the final receipt.  *Cf., e.g.*, *Estrella-Rosales v. Taco Bell Corp.*, No. 19 Civ. 18192 (WJM), 2020 WL 1685617, at *3 (D.N.J. Apr. 7, 2020) (permissible to advertise fast-food prices exclusive of state sales tax); *see also Tillage v. Comcast Corp.*, No. 17 Civ. 6477 (VC), 2021 WL 2177225, at *1 (N.D. Cal. May 28, 2021) ["*Tillage I*"] ("any reasonable consumer might expect" that a business will not include generally applicable "government taxes and surcharges" in its advertised price).  That cannot be said here. At least based on the Complaint, the existence of a 21.4% U.S. Royalty Fee would not inherently have been expected by a reasonable consumer, in the manner of a state sales tax or government surcharge.  On the pleadings, the Fee presents as more akin to the fees and charges that have formed the basis for other inadequate pre-purchase disclosure claims—and have survived motions to dismiss.  *See, e.g.*, *Sherwin-Williams Co.*, 636 F. Supp. 3d at 314 (claim stated based on failure to disclose 4% "Supply Chain" surcharge); *Watts*, 579 F. Supp. 2d at 348 (same for 15% "Tax Preparation Fee"); *Relativity Travel*, 2006 WL 2918081, at *2–3 (same for 3.5% foreign-currency surcharge).

In so holding, the Court has found particularly instructive the recent decision from the United States District Court in the Northern District of California in *Tillage v. Comcast Corp.*, No. 17 Civ. 6477 (VC), 2021 WL 3417940 (N.D. Cal. July 16, 2021) ["*Tillage II*"], applying a like California statute.  Plaintiffs there claimed that Comcast had "promis[ed] a flat-rate price for cable and internet services up front but fail[ed] to disclose certain fees" (in particular, the so-called "Broadcast TV Fees" and "Regional Sports Fees").  *Tillage I,* 2021 WL 2177225, at *1.  In moving to dismiss, Comcast argued that it had fully disclosed the existence of such fees in its solicitations, such that no reasonable consumer could have been misled.  *See id.* at *2–3.  Judge Chhabria rejected that argument.  "Merely noti[ng] that th[e] [advertised] price d[oes] not include 'fees' without further specification . . . would likely be deceptive," he held, "because the Broadcast TV Fees and Regional Sports Fees are not the types of fees that an ordinary consumer would expect to be added to the base price (in contrast to the more typical government-imposed fees)."  *Tillage II*, 2021 WL 3417940, at *1.  To be sure, had Comcast's customer-service agents "explained specifically that the Broadcast TV Fees and Regional Sports Fees would be charged on top of" the advertised price prior to purchase, such a disclosure would "cure[] the otherwise potentially deceptive nature of the advertisement."  *Id.*  But whether that had occurred could be answered only upon a developed record—one that elucidated what Comcast's agents had told the plaintiffs before purchase—and not on a motion to dismiss.  *Id.*; *see also Adkins v. Comcast Corp.*, No. 16 Civ. 5969 (VC), 2017 WL 3491973, at *2 (N.D. Cal. Aug. 1, 2017).

As in *Tillage*, the extent to which the allegedly undisclosed fee was in fact disclosed to any particular customer is incapable of pre-discovery resolution.  Sirius XM suggests that the "live conversations" customers, including plaintiffs, had with customer-service agents invariably included some discussion of applicable fees and taxes.  Def. Reply Br. at 3.  But the Complaint

and incorporated materials do not admit that.  The extent and content of any such oral communications thus cannot be resolved on the pleadings, making it premature to decide whether and "when the allegedly deceptive practice was fully disclosed."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020); *see also Tillage II*, 2021 WL 3417940, at *1; *Sherwin-Williams Co.*, 636 F. Supp. 3d at 315.

The Complaint, in sum, plausibly alleges that Sirius XM's advertisements misled the consumers whom §§ 349 and 350 "were enacted to safeguard": persons who "do not stop to analyze but are governed by appearances and general impressions."  *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977).  The Court cannot find Sirius XM's marketing non-misleading as a matter of law.[5]

In reaching this conclusion, the Court has also found informative the Second Circuit's recent decisions addressing an area of contract law: when a party can be found to have been on inquiry notice of claimed terms during contract formation.  In both doctrinal areas—there, whether and on what terms a contract has been formed, and, here, whether a practice was

---

[5] The Complaint mentions an alternative theory—that Sirius XM "falsely indicate[d] to consumers" that the Fee "is a government-related fee when in fact it is not."  Compl. ¶ 5.  That theory is not well pled.  It is implausible, without more, to claim that a reasonable consumer would read the prefix "U.S." in "U.S. Music Royalty Fee" to connote that the Fee was federally mandated.  As Sirius XM puts the point, "no one thinks that the U.S. Open—in either its golf or tennis variants—is a government-sponsored event."  Def. Br. at 15.  And New York courts have been hesitant to allow consumer-protection claims based on a fee's *description* where the fee was clearly disclosed before purchase.  *See, e.g.*, *Zuckerman*, 737 N.Y.S.2d at 14; *Ticketmaster*, 616 N.Y.S.2d at 362–63.  It is hard to conceive of the "injury" plaintiffs could plausibly allege if Sirius XM's misleading conduct were limited to the vocabulary it used to justify the Fee, rather than the non-disclosure of the Fee's existence in the first place.  "[A] fee included in an overall price quoted to a consumer is in no sense a hidden fee or surprise cost or fee."  *Dependable Sales & Serv., Inc. v. Truecar, Inc.*, No. 15 Civ. 1742 (PKC), 2016 WL 79992, at *8 (S.D.N.Y. Jan. 6, 2016).  "[C]ommon sense dictates that . . . reasonable consumers are primarily concerned with the end price they pay and the value they expect to receive" rather than the labels placed on a particular transaction.  *McCracken v. Verisma Sys., Inc.*, No. 22-2928, 2024 WL 314945, at *4 (2d Cir. Jan. 29, 2024).

disclosed consistent with GBL §§ 349 and 350—the decisive inquiry is whether an objective

"reasonable consumer" "should have known of the terms" on offer to him in a transaction.

*Compare, e.g.*, *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023) (so framing contract

formation inquiry), *with, e.g.*, *Oswego Labors' Local 214 Pension Fund*, 85 N.Y.2d at 27

(asking, in consumer-protection context, "whether plaintiffs possessed or could reasonably have

obtained the relevant information" so as "to have been informed . . . about the" allegedly

misleading conduct).  Two Second Circuit decisions in the contract formation context shed light

here.

At issue in *Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, 999 F.3d 828 (2d

Cir. 2021), as here, was a hard-copy advertisement, excerpted below:



*Id.* at 832.  The question presented was whether the advertisement—which offered a "free sub

sandwich" to all those who texted a keyword to a phone-number and thereby signed up for

Subway's "weekly offers"—put a "reasonably prudent" person on inquiry notice of the "[t]erms

and conditions" mentioned in the fine print. *See id.* at 830–83. The Circuit held that a
"reasonable consumer" would not be on notice of such terms, given that the "small-print
disclaimer" was "dwarfed by the surrounding colorful text and imagery." *Id.* at 836 (citation
omitted). Relevant here, one reason the Circuit found Subway's disclaimer inconspicuous was
its "mixed-media incorporation of contractual terms" requiring a consumer to go from a print
advertisement to a website. *Id.* at 839. "When a person is invited to click on a conspicuous
hyperlink," the Circuit explained, she "may do so with ease." *Id.* (citing *Meyer v. Uber Techs.,
Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). "By contrast, when a consumer must type in a thirty-
seven-character URL to their cellphone or computer, it is more difficult to navigate to the terms
of use in order to confirm" just what she has been asked to agree to. *Id.*

      At issue in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), was whether a
consumer had "reasonable notice" of Amazon's terms and conditions when placing an order.
*See id.* at 235. The order page looked as follows:



*Id.* at 241.  Whether Amazon provided sufficient notice, the Circuit held, could not be resolved as a matter of law.  *Id.* at 238.  It noted that the key "message itself—'By placing your order, you agree to Amazon.com's . . . conditions of use'—is not bold, capitalized, or conspicuous in light of the whole webpage."  *Id.*  It observed that the webpage's many links, in "different colors, fonts, and locations," "generally obscure" the notification that Amazon's terms and conditions apply to the transaction.  *Id.* at 237. "Given the breadth of the range of technological savvy of online purchasers," the Circuit stated, "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound."  *Id.* (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014)); *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 295 (2d Cir. 2019).

The Circuit's rationale in these cases counsels against dismissal here.  On the pleadings, a reasonable factfinder could find that, as in *Soliman*, Sirius XM's "mixed-media incorporation of contractual terms" in its mailer—requiring a prospective customer to "type in" a "URL to their cellphone or computer" and then navigate through at least three webpages to determine the amount of the additional fee—"obscure[d] th[at] message" so as not to give a reasonably prudent consumer notice of it.  999 F.3d at 836–39.  And such a factfinder could find that, as in *Nicosia*, Sirius XM's disclaimer about other "[f]ees & taxes" was "not bold, capitalized, or conspicuous in light of the whole" mailer, and was "generally obscure[d]" by other "distracting" elements such as the prominently touted sticker price of "$5/month."  834 F.3d at 237.  As the Circuit has emphasized, that a consumer has a "duty to read" terms properly "called to [his] attention" does not imply a "duty to ferret out contract provisions . . . contained in inconspicuous hyperlinks."  *Starke*, 913 F.3d at 295 (citation omitted); *see also Danone, U.S., LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019).  And a reasonable consumer is not "expected to look beyond

misleading representations" in one part of an advertisement "to discover the truth . . . in small print" online. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 944 (7th Cir. 2001) (Wood, J., concurring) (rejecting that consumers have "an unbounded duty of inquiry").

Here, on the limited facts cognizable at this stage, "reasonable minds could disagree on the reasonableness of [the] notice" of the U.S. Royalty Fee that Sirius XM provided in its promotional advertisements. *Nicosia*, 834 F.3d at 238. It awaits discovery whether and how other disclosures, including telephonically by customer service agents, might have shaped the understandings of reasonable consumers.

> b.    *Injury*

Sirius XM alternatively argues that the Complaint does not adequately allege injury, the final element of §§ 349 and 350 claims. Def. Br. at 16–18; Def. Reply Br. at 8–9. Plaintiffs counter that the Complaint alleges that, had they known of the Fee, "they would not have been willing to pay as much for their music plans" or "would not have purchased music plans at all." Compl. ¶ 80; *see also* Pl. Br. at 24–25. Plaintiffs are correct: that allegation plausibly alleges injury.

Sirius XM contends that a plaintiff bringing claims under §§ 349 and 350 must "allege that, on account of a materially misleading practice, [the plaintiff] purchased a product and did not receive the full value of [the] purchase." Def. Br. at 16 (quoting *Orlander*, 802 F.3d at 302). It argues that "[w]here a plaintiff merely 'believes she was deceived into purchasing the product and spending what she did,' and there are no allegations 'related to the value or the purchased product, or how the product fell short of what it purported to be,'" her GBL §§ 349 and 350

claims must fail. *Id.* (quoting *DaCorta v. AM Retail Grp., Inc.*, No. 16 Civ. 1748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018)). Here, Sirius XM argues, "the alleged deception . . . is identical to the pleaded injury," requiring dismissal. *Id.* at 17.

Sirius XM is mistaken. That a plaintiff has "not receive[d] the full value of [the] purchase" is *one* way of establishing injury. *Orlander*, 802 F.3d at 302. It is not the only way. A consumer who agreed to pay a certain sum for a product (say, $10) but was forced to pay more than he bargained for (say, $100) has also suffered an injury. *See, e.g.*, *Sherwin-Williams Co.*, 636 F. Supp. 3d at 316 (plaintiff suffered injury when charged a hidden fee); *Watts*, 579 F. Supp. 2d at 349 (same); *Relativity Travel*, 2006 WL 2918081, at *3 (same). This theory of injury reflects an opportunity cost. The consumer may fairly argue that, had he known *ex ante* that he would have to pay $100 for a product instead of $10, he would have taken his business elsewhere or declined to purchase that product at all; on that view, the deceptive practice cost him $90. *See, e.g.*, *Peloton Interactive, Inc.*, 2020 WL 6564755, at *11. That suffices to establish injury for plaintiff Carovillano, who alleges he "cancel[ed] his subscription after he learned about the existence of the U.S. Music Royalty Fee" and demanded a "refund[]." Compl. ¶ 68.[6]

Plaintiff Brandt, however, cannot plead injury on that theory. He remains a Sirius XM subscriber and continues to pay the Fee, Compl. ¶ 73, and thus cannot plausibly claim that he would not have subscribed had he known about the Fee in advance. But he claims injury by

---

[6] *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999), on which Sirius XM relies, is not to the contrary. As Judge Liman has explained, "*Small* does not stand for the broad proposition that it is legally insufficient for a plaintiff in federal court to plead that it would not have purchased the subject product had it known that defendant's claims were misrepresentations." *Peloton Interactive, Inc.*, 2020 WL 6564755, at *11. Rather, *Small* holds that there must be some "connection between the misrepresentation and . . . harm from, or failure of, the product." *Small*, 94 N.Y.2d at 56. The Complaint here pleads such a connection between the alleged misrepresentation (the advertised price) and the harm (the purchase price). *See Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013).

another means.  He pleads that he would "not have paid as much for [Sirius XM's] services" had

he "known the truth" about the Fee.  Compl. ¶ 117.  Such a "price premium" theory can be

cognizable where a complaint plausibly alleges that a misrepresentation "artificially inflate[d]

the market price of a product, causing a plaintiff to pay more for it than she otherwise would

have—regardless of whether she even saw the misrepresentation."  *Fishon v. Peloton Interactive,*

*Inc.*, 620 F. Supp. 3d 80, 93 (S.D.N.Y. 2022).  Judge Furman offers a helpful illustration:

> Imagine, for example, that a company sells a pen and advertises that it is a rugged
> writing instrument that can survive any environment, all the while knowing that the
> pen will break the first time it falls onto a hard surface.  Before it is released, the
> pen generates significant buzz due to its alleged ruggedness and, because the initial
> supply is limited, the company charges a high price.  One customer purchases the
> pen at that high price not because it can withstand abuse, but because it looks just
> like the pen that a cherished relative used, and the customer intends to frame it.
> That customer is surely "aggrieved," even though the misrepresentation was
> irrelevant to the customer's decision to purchase the pen.  But for the
> misrepresentation, the price of the pen may have been lower, and the customer
> would have paid less for it.

*In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16 Civ. 740 (JMF), 2020 WL 4694172, at *10

n.7 (S.D.N.Y. Aug. 13, 2020).

Although this case is unlike most involving a price premium, the Court cannot say as a

matter of law that a price-premium theory is unavailable here.  In the paradigm price-premium

case, a plaintiff alleges that a company marketed a product as having a "unique quality,"

permitting it a charge a price premium from customers who later learned the product lacked the

marketed quality.  *See, e.g.*, *Duran*, 450 F. Supp. 3d at 347 (price premium based on hair gel's

promise of "no flakes"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292–93

(S.D.N.Y. 2015) (price premium based on lozenges' advertised effectiveness in reducing cold

symptoms); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 457, 480–82

(S.D.N.Y. 2014) (price premium based on "Active Natural" labeling of personal-care products).

Here, the product's advertised unique quality is the low price itself.  But, under the case law, that does not foreclose a price-premium theory.  Consider again a product advertised for $10 where the merchant surreptitiously charges $100.  Assume that other stores sell the same (or similar) products for $15.  If the merchant is forced to advertise his real price, there is little reason to think his pricing behavior will remain static—instead, he will have to adjust his real price downwards from $100 to account for the market price of $15.  *See, e.g.*, *Sherwin-Williams Co.*, 636 F. Supp. 3d at 316–17; *Peloton Interactive, Inc.*, 620 F. Supp. 3d at 94–95; *In re Amla Litig.*, 282 F. Supp. 3d 751, 768 (S.D.N.Y. 2017).  Here, as Brandt alleges, had Sirius XM revealed the all-in price of its subscriptions, it would have faced downward price pressure from competitors, such as "Apple Music, Spotify, Amazon Music, [and] Google Play Music," all of which offer similar music-streaming services but do not "charge any separate music royalty fee."  Compl. ¶ 34.[7]  On the pleadings, that theory of price injury is plausible.

The Court thus denies Sirius XM's Rule 12(b)(6) motion to dismiss plaintiffs' claims under GBL §§ 349 and 350.

### B.    GBL §§ 349 and 350 Claims for Injunctive Relief

As to plaintiffs' GBL §§ 349 and 350 claims, Sirius XM separately moves to dismiss the Complaint's bid for injunctive relief under Rule 12(b)(1) for lack of standing.  It argues that the Complaint does not allege a real or immediate threat of future injury.  On this point, the Court holds with Sirius XM.

---

[7] Taking such competitive pricing behavior into account is commonplace in actions based on deceptive statements.  *See, e.g.*, *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, No. 16 MDL 2695 (JB) (LF), 2023 WL 6121894, at *124–25 (D.N.M. Sept. 19, 2023) (utilizing a complex multiphase simulation to examine the price-competitive effects of the defendant's misleading statement).

### 1.      Applicable Legal Principles

Because "standing is not dispensed in gross," Article III requires that a plaintiff "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  As a result, a plaintiff who pursues injunctive relief must demonstrate "the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed*, Inc., 638 F.3d 401, 404 (2d Cir. 2011).

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  Neither "allegations of possible future injury" nor "past exposure to illegal conduct" is sufficient to clear this bar. *Nicholas v. Trump*, 433 F. Supp. 3d 581, 587 (S.D.N.Y. 2020) (cleaned up).

### 2.      Application

Plaintiffs pursue one theory of standing.  Terming themselves "private attorneys general," they argue that they are acting to "protect the general public by putting an end to SiriusXM's unlawful advertising and overcharging scheme."  Compl. ¶ 10.  The legislative intent behind New York's consumer protection statute, they argue, and the fact that they propose to pursue relief on behalf of a class, supports their standing to play this role.  Pl. Br. at 24.

Plaintiffs' analysis is flawed.  Whether a party has Article III standing to pursue relief in federal court presents a question of federal constitutional law.  It is well settled under that law that, although past injuries may supply standing to seek money damages, such "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239.  And as the case law reflects, for multiple reasons, the "past purchasers of a product . . . are not likely to encounter

future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). "In the first place, past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item." *Id.* Second, "even if they do purchase it again, there is no reason to believe that" they "will incur a harm anew," *id.*, given that they are now "keenly aware" of the allegedly deceptive practice at issue, *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013). Further, "[t]here is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera*, 208 F. Supp. at 564. The "named plaintiffs must have standing in order to seek injunctive relief on behalf of the class." *Id.*

In light of these principles, neither plaintiff has standing to seek injunctive relief. Each is a past purchaser. And given their pleadings, each today necessarily is alert to Sirius XM's pricing, including the U.S. Royalty Fee that they contend was inadequately disclosed at the time of their initial subscription. These plaintiffs cannot credibly claim that a future subscription on their part to Sirius XM's streaming services would reflect deception on that point. *See, e.g.*, *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 343 (S.D.N.Y. 2021) (no standing to seek injunctive relief where plaintiff had become aware of allegedly deceptive practice and chose to continue her subscription); *see also Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 395 (S.D.N.Y. 2021) (collecting cases). [8]

---

[8] Plaintiffs do not pursue a theory of standing based on the continuing price premium attributable to Sirius XM's allegedly misleading advertising. There is thus no occasion to inquiry whether such could support standing for current subscriber Brandt.

The Court thus dismisses, for want of Article III standing, the Complaint's claims for injunctive relief based on violations of §§ 349 and 350.  That dismissal is without prejudice to the right of plaintiffs, or others, to pursue the same or similar relief in state court.[9]

### C.      Implied Covenant of Good Faith and Fair Dealing

Sirius XM next moves to dismiss, under Rule 12(b)(6), the Complaint's claims of breaches of the implied covenant of good faith and fair dealing.

### 1.      Applicable Legal Principles

"Under New York law, parties to an express contract are bound by an implied duty of good faith."  *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992); *see also New Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). The implied covenant is "breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement."  *Skillgames, LLC v. Brody*, 767 N.Y.S.2d 418, 423 (1st Dep't 2003) (citation and quotation marks omitted); *see also Moran v. Erk*, 11 N.Y.3d 452, 456 (2008)

---

[9] Because "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability," *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989), the Court's determination that plaintiffs lack standing to sue for injunctive relief in this case does not foreclose a state court from considering such a claim on the merits.  Because New York courts have "[f]or generations . . . treated standing as a common-law concept," far removed from the strict federal standards, *Saratoga County Chamber of Com., Inc. v. Pataki*, 100 N.Y.2d 801, 812 (2003), plaintiffs' claim may be viable there.  *See, e.g.*, *Soc'y of Plastics Indus., Inc. v. County of Suffolk*, 77 N.Y.2d 761, 772 (1991) (the "standing requirement in [f]ederal actions" is "grounded in the [f]ederal constitutional requirement of a case or controversy, a requirement that has no analogue in the [New York] State Constitution").  Separately, the New York Attorney General possesses express authority to "bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices," GBL § 349(b), and has exercised that authority, *see, e.g.*, *State v. Juul Labs, Inc.*, No. 452168/2019, 2022 WL 2473459 (N.Y. Sup. Ct. July 5, 2022); *State v. Fanduel, Inc.*, No. 453056/2015, 2015 WL 8490461, at *1 (N.Y. Sup. Ct. Dec. 11, 2015) *State v. The Trump Entrepreneur Initiative LLC*, No. 451463/2013, 2014 WL 344047 (N.Y. Sup. Ct. Jan. 30, 2014).

("The implied covenant . . . embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (citation and quotation marks omitted)).  "In order to find a breach of the implied covenant, a party's action must 'directly violate an obligation that may be presumed to have been intended by the parties.'"  *Gaia House Mezz LLC v. State Street Bank & Tr. Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (citation omitted).

## 2.   Discussion

Sirius XM argues that the implied-covenant claim fails because the parties' contract did not impose a disclosure obligation on Sirius XM.  Def. Br. at 20.  On the contrary, it argues, the Customer Agreement "makes clear" that Sirius XM "may charge" the U.S. Royalty Fee.  *Id.*  To imply a duty "that would prohibit Sirius XM" from charging the Fee, Sirius XM argues, would "conflict with the provision . . . authorizing [it] to do just that."  *Id.* (alterations in original) (quoting *Quintanilla*, 541 F. Supp. 3d at 351).

That argument does not support dismissal, because it assumes a disputed conclusion: that there *is* a binding enforceable contract between Sirius XM and the plaintiffs that encompasses a customer obligation to pay the U.S. Royalty Fee.  The premise of plaintiffs' lawsuit is that they were not on inquiry notice of, and not bound by, that term, and that in imposing that fee, Sirius XM violated New York law, to wit, GBL §§ 349 and 350.  Plaintiffs have plausibly pled that Sirius XM's imposition of this fee was not adequately disclosed or consented to.  Under these circumstances, it is premature to conclude that a binding agreement between the parties exists so as to leave no room for plaintiffs to recover in quasi-contract.  *See, e.g.*, *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 429–30 (S.D.N.Y. 2020) (denying motion to dismiss implied-covenant claim where scope of contract unclear); *Hoover v. HSBC Mortg. Corp. (USA)*, 9 F.

Supp. 3d 223, 249 (N.D.N.Y. 2014) (denying motion to dismiss implied-covenant claim where contract ambiguous); *E\*Trade Fin. Corp. v. Deutsche Bank AG*, No. 05 Civ. 902 (RWS), 2008 WL 2428225, at *26 (S.D.N.Y. June 13, 2008) (same).

The Court accordingly denies the motion to dismiss the implied-covenant claim, without prejudice to Sirius XM's ability to move against this claim later in this litigation.

### D.    Unjust Enrichment

Sirius XM next moves under Rule 12(b)(6) to dismiss plaintiffs' claim that the Fee has unjustly enriched Sirius XM.

#### 1.    Applicable Legal Principles

"Unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Rather, it "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* "To establish unjust enrichment, the plaintiff must show '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020) (quoting *Buonasera*, 208 F. Supp. 3d at 567).

Courts in this Circuit "have consistently held that unjust enrichment claims are duplicative of GBL claims." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021); *see also, e.g.*, *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they arise from the same facts

. . . and do not allege distinct damages.").  Where an "unjust enrichment claim is premised on the same factual allegations as those supporting [a plaintiff's] other claims, and [a plaintiff] ha[s] not alleged distinct damages with respect to this claim," an unjust enrichment claim will be dismissed.  *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021).

### 2.    Discussion

Sirius XM argues that the Complaint's unjust-enrichment claim is "impermissibly duplicative" of their GBL claims. Def. Br. at 21.  That is correct, and plaintiffs have not identified any basis to distinguish the two.  Plaintiffs note that in general, plaintiffs may plead claims in the alternative.  *Contra* Pl. Br. at 22–23.  But that general proposition does not carry the day here, because, "even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).  That claim here clearly is duplicative of the §§ 349 and 350 claims.  It is based on the same factual allegations and seeks the same damages.  *See* Compl. ¶¶ 131–37; *see also, e.g.*, *Patellos*, 523 F. Supp. 3d at 537 (dismissing unjust-enrichment claim as "coterminous" with plaintiffs' GBL claims); *Dwyer v. Allbirds, Inc.*, No. 21 Civ. 5238 (CS), 2022 WL 1136799, at *11 (S.D.N.Y. Apr. 18, 2022) (same); *Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (same).  The Court therefore dismisses the unjust-enrichment claim.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Sirius XM's motion to dismiss.  The Court dismisses the Complaint's (1) claims for injunctive relief on its GBL §§ 349 and 350 claims, without prejudice to plaintiffs' right to pursue such relief in state court;

and (2) unjust-enrichment claims, with prejudice.  The Court otherwise denies the motion to dismiss.

Sirius XM must answer the Complaint by February 20, 2024.  By separate order, the Court will schedule an initial pretrial conference.  The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: February 6, 2024
       New York, New York

35